# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JOSEPH AMORE, PLAINTIFF

ATTORNEYS FOR PLAINTIFF:
Richard M. Wallace, Northern Dist. No. 301275
Gutman & Wallace
411 North Tioga Street, Ithaca, New York 14850
Telephone 607-272-2102  Telecopy 607-272-2350

Law Office of Edward E. Kopko
Edward E. Kopko, Northern Dist. No. 510874
15 Nottingham Drive, Ithaca, New York 14850
Telephone 607-269-1300 Telecopy 607-269-1301
eek@kopkolaw.com

### V.

CITY OF ITHACA and
ANDREW NOVARRO, DEFENDANTS

**JURY TRIAL DEMANDED**

CV-04_____

---

## COMPLAINT

### INTRODUCTION

This is an action by Joseph Amore (Amore) to recover monetary damages against the City of Ithaca, New York (Ithaca) and against Andrew Novarro (Novarro), a police officer employed by the City of Ithaca, for a deprivation of constitutional rights by arresting and prosecuting Amore for allegedly violating the Penal Law, § 240-35(3), a section that had been declared invalid by the New York Court of Appeals eighteen years prior to the arrest.

### JURISDICTION

28 U.S.C. § 1331 and 1343(a)(3) & (4) confer jurisdiction upon this Court.  Amore's claims against Ithaca and Novarro are predicated upon 42 U.S.C. § 1983, relating to deprivation of rights.  Amore's claim against Ithaca is further predicated upon the rule of law stated in *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978) in that Ithaca has a custom, policy or practice of allowing, acquiescencing, or encouraging police officers employed by Ithaca to arrest citizens for allegedly violating the Penal Law, § 240.35(3), which section was declared unconstitutional by the New York Court of Appeals in *People v. Uplinger* (58 N.Y.2nd 936).

Amore's claim against Ithaca is further predicated upon the rule of law stated in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) in that Ithaca failed to train, discipline, or control police officers who arrest citizens for allegedly violating the Penal Law, § 240.35(3), which section was declared unconstitutional by the New York Court of Appeals in *People v. Uplinger* (58 N.Y.2nd 936).

**VENUE**

All of the acts complained of in this complaint occurred in Tompkins County, a county within the Northern District of New York.

**IDENTITY OF THE PARTIES**

1) Amore is a resident of the County of Tompkins and State of New York.

2) Ithaca is a domestic municipal corporation organized and existing under the laws of the State of New York.

3) Novarro was a police officer employed by the City of Ithaca.

4) At all times Novarro was acting in the course and general scope of his employment by the City pursuant to the authority given to him by the City and pursuant to its instructions and duty assignments.

5) Novarro is sued in his individual capacity.

**FACTS COMMON TO ALL COUNTS**

6) On October 19, 2001, Amore was lawfully present in Stewart Park, a public park owned by Ithaca.

7) Novarro, who was not wearing the uniform of the Ithaca Police Department but was attired in civilian clothes, was assigned and directed by supervisory agents or employees of the

Ithaca Police Department to conduct a stakeout or undercover investigation in Stewart Park to enforce the Penal Law, including § 240.35(3), relating to loitering.

8)  On October 19, 2001, Novarro affirmatively instigated or procured the arrest of Amore for allegedly violating the Penal Law § 240.35(3), relating to loitering.

9)  On October 19, 2001, Novarro seized, searched, and detained Amore.

10) On October 19, 2001, Novarro issued an appearance ticket to Amore, charging Amore with violating the Penal Law, § 24035(3), relating to loitering.   A copy of the document is attached as Exhibit One.

11) On October 24, 2001, Novarro filed an accusatory instrument charging Amore with violating the Penal Law, § 240.35(3), relating to loitering.   A copy of the document is attached as Exhibit Two.

12) As a consequence of the accusatory instrument filed by Novarro, Amore was compelled to appear in the Ithaca City Court.

13) On February 23, 1983, the New York Court of Appeals decided the case of *People v. Uplinger* (58 N.Y.2nd 936) in which the Court found the Penal Law, § 240.35(3) to be unconstitutional.   A copy of the document is attached as Exhibit Three.

14) On November 8, 2001, the Office of the City Prosecutor filed a motion with the Ithaca City Court seeking to dismiss the charge filed by Novarro against Amore.   A copy of the document is attached as Exhibit Four.

15) On November 15, 2001, the Ithaca City Court entered a Decision and Judgment dismissing the charge filed by Novarro against Amore.   A copy of document is attached as Exhibit Five.

16) At some unknown time following the arrest of Amore, Novarro caused the circumstances surrounding the arrest of Amore to be disseminated to the public.

COUNT ONE
AMORE V. NOVARRO
SECTION 1983 CLAIM: DEPRIVATION OF 4TH AMENDMENT RIGHT TO BE FREE
FROM UNLAWFUL ARREST AND SEIZURE

SECTION 1983, ELEMENT ONE: NOVARRO ACTED UNDER COLOR OF LAW

17) All of the allegations of the complaint are incorporated.

18) By virtue of Novarro's appointment and employment as a police officer with Ithaca, Novarro is a "police officer" as that term is defined in CPL § 1.20(34)(d).  As a police officer, Novarro, when arresting Amore, acted under color of law by using the authority invested in him by virtue of his appointment and by using the arrest procedures, appearance ticket procedures, and preliminary arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

SECTION 1983, ELEMENT TWO: NOVARRO'S ACTIONS DEPRIVED AMORE OF THE FOURTH AMENDMENT RIGHT TO BE FREE FROM UNLAWFUL ARREST AND SEIZURE.

19) Amore has a clearly established right not to be arrested without probable cause. *See Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 12/02/1994); *Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993).

20) The right to be free from arrest or prosecution in the absence of probable cause is a long established constitutional right. *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997).

21) In order to state a claim for false arrest under the federal constitution, plaintiff must show that he was arrested without probable cause. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569

(2d Cir. 1996) (*citing Broughton v. New York*, 37 N.Y.2d 451, 456, 335 N.E. 2d 310, 313, 373 N.Y.S.2d 87, 93 (1975)).

22) A section 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).

23) Liability for false arrest gives rise to liability under 42 U.S.C. § 1983. *See Cook v. Sheldon*, 41 F.3d 73, 77-79 (1994).

24) The New York common law tort of false arrest supports a claim against police under section 1983 because it violates the Fourth Amendment. *See Posr v. Doherty*, 944 F.2d 91, 97, 98 (2d Cir. 1991).

FALSE ARREST: ELEMENT ONE: NOVARRO INTENDED TO CONFINE AMORE

25) On October 19, 2001, Novarro affirmatively instigated or procured the arrest of Amore for allegedly violating the Penal Law § 240.35(3), relating to loitering.

26) On October 19, 2001, Novarro seized, searched, and detained Amore.

FALSE ARREST: ELEMENT TWO: AMORE WAS CONSCIOUS OF THE CONFINEMENT

27) Amore was conscious of the confinement imposed upon him by Novarro because Novarro physically restrained Amore, Novarro searched Amore, and Novarro told Amore that Amore could not leave the scene.

FALSE ARREST: ELEMENT THREE: AMORE DID NOT CONSENT TO THE CONFINEMENT

28) Amore never consented to the confinement imposed upon him by Novarro and sought to leave the scene, but he was physically prohibited from doing so by Novarro.

FALSE ARREST: ELEMENT FOUR: THE CONFINEMENT WAS NOT OTHERWISE PRIVILEGED

29) It was objectively unreasonable for Novarro to believe that his conduct did not violate Amore's rights because (1) on February 23, 1983, the New York Court of Appeals decided the case of *People v. Uplinger* (58 N.Y.2nd 936) in which the Court found the Penal Law, § 240.35(3) to be unconstitutional and (2) because a reasonable police officer in Novarro's position would understand that his arrest of Amore was unlawful.

30) Alternatively, police officers of reasonable competence could not disagree whether probable cause existed because on February 23, 1983, the New York Court of Appeals decided the case of *People v. Uplinger* (58 N.Y.2nd 936) in which the Court found the Penal Law, § 240.35(3) to be unconstitutional.

DAMAGES

31) Novarro violated Amore's constitutional right to be free from unlawful arrest, as guaranteed by the Fourth Amendment of the United States Constitution.

32) Novarro violated 42 U.S.C. § 1983 by violating Amore's constitutional right to be free from unlawful arrest, as guaranteed by the Fourth Amendment of the United States Constitution.

33) Novarro caused Amore to incur special damages, including but not limited to past and future medical expenses; past and future attorney fees; past and future loss of income; past and future loss of earning capacity.

34) Novarro caused Amore to incur general damages, including but not limited past and future mental and physical pain and suffering.

35) Novarro acting maliciously and wantonly, with the intent to injure Amore, in committing the acts described in this complaint, warranting the imposition of punitive damages.

Wherefore, Joseph Amore demands judgment against Andrew Navarro in an amount in excess of the jurisdictional limitations of this court for mandatory arbitration, plus attorney fees, interest, costs, and punitive damages.

COUNT TWO
AMORE V. NOVARRO
SECTION 1983 CLAIM: DEPRIVATION OF 4TH AMENDMENT RIGHT TO BE FREE
FROM UNLAWFUL MALICIOUS PROSECUTION

SECTION 1983, ELEMENT ONE: NOVARRO ACTED UNDER COLOR OF LAW

36) All of the allegations of the complaint are incorporated.

37) By virtue of Novarro's appointment and employment as a police officer with Ithaca, Novarro is a "police officer" as that term is defined in CPL § 1.20(34)(d).  As a police officer, Novarro, when arresting Amore, acted under color of law by using the authority invested in him by virtue of his appointment and by using the arrest procedures, appearance ticket procedures, and preliminary arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

SECTION 1983, ELEMENT TWO: NOVARRO'S ACTIONS DEPRIVED AMORE OF THE FOURTH AMENDMENT RIGHT TO BE FREE FROM MALICIOUS PROSECUTION.

38) The elements of malicious prosecution under § 1983 are "substantially the same" as the elements under New York law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003); *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992).

39) Amore has a clearly established right not to be maliciously prosecuted. *See Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 12/02/1994); *Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993).

40) The New York common law tort of malicious prosecution supports a claim against police under section 1983 because it violates the Fourth Amendment. *See Posr v. Doherty*, 944 F.2d 91, 97, 98 (2d Cir. 1991).

41) Liability for malicious prosecution gives rise to liability under 42 U.S.C. § 1983. *See Cook v. Sheldon*, 41 F.3d 73, 77-79 (1994).

MALICIOUS PROSECUTION: ELEMENT ONE: NOVARRO COMMENCED OR CONTINUED A CRIMINAL PROCEEDING AGAINST AMORE.

42) On October 19, 2001, Novarro affirmatively instigated or procured the arrest of Amore for allegedly violating the Penal Law § 240.35(3), relating to loitering.

43) On October 19, 2001, Novarro seized, searched, and detained Amore.

44) On October 19, 2001, Novarro issued an appearance ticket to Amore, charging Amore with violating the Penal Law, § 24035(3), relating to loitering.  A copy of the document is attached as Exhibit One.

45) On October 24, 2001, Novarro filed an accusatory instrument charging Amore with violating the Penal Law, § 240.35(3), relating to loitering.  A copy of the document is attached as Exhibit Two.

MALICIOUS PROSECUTION: ELEMENT TWO: THE PROCEEDING WAS TERMINATED IN AMORE'S FAVOR.

46) On November 8, 2001, the Office of the City Prosecutor filed a motion with the Ithaca City Court seeking to dismiss the charge filed by Novarro against Amore.  A copy of the document is attached as Exhibit Three.

47) On November 15, 2001, the Ithaca City Court entered a Decision and Judgment dismissing the charge filed by Novarro against Amore.  A copy of document is attached as Exhibit Four.

MALICIOUS PROSECUTION: ELEMENT THREE: NOVARRO DID NOT HAVE PROBABLE CAUSE FOR THE CRIMINAL PROCEEDING.

48) It was objectively unreasonable for Novarro to believe that his conduct did not violate Amore's rights because (1) on February 23, 1983, the New York Court of Appeals decided the case of *People v. Uplinger* (58 N.Y.2nd 936) in which the Court found the Penal Law, § 240.35(3) to be unconstitutional and (2) because a reasonable police officer in Novarro's position would understand that his arrest of Amore was unlawful.

49) Alternatively, police officers of reasonable competence could not disagree whether probable cause existed because on February 23, 1983, the New York Court of Appeals decided the case of *People v. Uplinger* (58 N.Y.2nd 936) in which the Court found the Penal Law, § 240.35(3) to be unconstitutional.

MALICIOUS PROSECUTION: ELEMENT FOUR: NOVARRO COMMENCED THE CRIMINAL PROCEEDING AGAINST AMORE WITH MALICE.

50) New York law "does not require a plaintiff to prove that the defendant was motivated by spite or hatred, ... [r]ather, it means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978) (quoted in *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994)).

51) The police officers of the Ithaca Police Department, specifically including Defendant Novarro, were aware that the Penal Law, § 240.35(3), was held to be unconstitutional and unenforceable but the police officers of the Ithaca Police Department, specifically including Defendant Novarro, nonetheless conducted periodic undercover operations in Stewart Park, Ithaca, to thwart the legal conduct of persons, which conduct the members of the Ithaca Police Department, specifically including Defendant Novarro, determined was repugnant and offensive

to them as individuals and which conduct the Ithaca police, including Defendant Novarro, attempted to suppress through illegal undercover operations and illegal arrest.

52) The police officers of the Ithaca Police Department, including Defendant Novarro, had an ulterior motive of suppressing and thwarting legal conduct, which the police officers of the Ithaca Police Department, including Defendant Novarro, found to be objectionable.

53) Alternatively, Novarro acted with "a reckless or grossly negligent disregard of the plaintiff's rights." *Hernandez v. State*, 228 A.D.2d 902, 904 (3d Dep't 1996); Boose, 71 A.D.2d at 70).

MALICIOUS PROSECUTION: ELEMENT FIVE: A POST-ARRAIGNMENT DEPRIVATION OF LIBERTY

54) A "plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must ... show some deprivation of liberty consistent with the concept of 'seizure,'" in order "to ensure that the § 1983 plaintiff has suffered a harm of constitutional proportions." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995), cert. denied, 517 U.S. 1189 (1996); *accord Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).

55) Being required to appear in court, or to remain in New York State while charges are pending (which is generally required of criminal defendants released on their own recognizance, see *Rohman v. New York City Transit Auth*., 215 F.3d 208, 216-18 (2d Cir. 2000)(citing N.Y. Crim. Proc. L. § 510.40)), is ordinarily sufficient to establish this element. *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997) (requiring accused citizen to make periodic court appearances constitutes "seizure" under the Fourth Amendment), cert. denied, 522 U.S. 1115 1998).

56) Amore was required to appear in Ithaca City Court and was required, as a condition of his post-arraignment release, to remain in the State of New York while the charge against him was pending.

DAMAGES

57) Novarro violated Amore's constitutional right to be free from malicious prosecution, as guaranteed by the Fourth Amendment of the United States Constitution.

58) Novarro violated 42 U.S.C. § 1983 by violating Amore's constitutional right to be free from malicious prosecution, as guaranteed by the Fourth Amendment of the United States Constitution.

59) Novarro caused Amore to incur special damages, including but not limited to past and future medical expenses; past and future attorney fees; past and future loss of income; past and future loss of earning capacity.

60) Novarro caused Amore to incur general damages, including but not limited past and future mental and physical pain and suffering.

61) Novarro acting maliciously and wantonly, with the intent to injure Amore, in committing the acts described in this complaint, warranting the imposition of punitive damages.

Wherefore, Joseph Amore demands judgment against Andrew Navarro in an amount in excess of the jurisdictional limitations of this court for mandatory arbitration, plus attorney fees, interest, costs, and punitive damages.

COUNT THREE
AMORE V. NOVARRO
SECTION 1983 CLAIM: DEPRIVATION OF 4TH AMENDMENT RIGHT TO BE FREE
FROM ABUSE OF PROCESS

SECTION 1983, ELEMENT ONE: NOVARRO ACTED UNDER COLOR OF LAW

62) All of the allegations of the complaint are incorporated.

63) By virtue of Novarro's appointment and employment as a police officer with Ithaca, Novarro is a "police officer" as that term is defined in CPL § 1.20(34)(d). As a police officer, Novarro, when arresting Amore, acted under color of law by using the authority invested in him

by virtue of his appointment and by using the arrest procedures, appearance ticket procedures, and preliminary arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

SECTION 1983, ELEMENT TWO: NOVARRO'S ACTIONS DEPRIVED AMORE OF THE FOURTH AMENDMENT RIGHT TO BE FREE FROM ABUSE OF PROCESS.

64) Amore has a clearly established right not to be the subject of abuse of process. *See Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 12/02/1994); *Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993).

65) The New York common law tort of abuse of process supports a claim against police under section 1983 because it violates the Fourth Amendment. *See Posr v. Doherty*, 944 F.2d 91, 97, 98 (2d Cir. 1991).

66) Liability for abuse of process gives rise to liability under 42 U.S.C. § 1983. *See Cook v. Sheldon*, 41 F.3d 73, 77-79 (1994).

ABUSE OF PROCESS: ELEMENT ONE: NOVARRO EMPLOYED REGULARLY ISSUED LEGAL PROCESS TO COMPEL PERFORMANCE OR FORBEARANCE OF SOME ACT.

67) On October 19, 2001, Novarro affirmatively instigated or procured the arrest of Amore for allegedly violating the Penal Law § 240.35(3), relating to loitering, by issuing to Amore an Appearance Ticket, requiring Amore to appear at Ithaca City Court.

68) On October 19, 2001, Novarro seized, searched, and detained Amore.

69) On October 19, 2001, Novarro issued an appearance ticket to Amore, charging Amore with violating the Penal Law, § 24035(3), relating to loitering.   A copy of the document is attached as Exhibit One.

70) On October 24, 2001, Novarro filed an accusatory instrument charging Amore with violating the Penal Law, § 240.35(3), relating to loitering. A copy of the document is attached as Exhibit Two.

ABUSE OF PROCESS: ELEMENT TWO: NOVARRO EMPLOYED REGULARLY ISSUED LEGAL PROCESS TO COMPEL PERFORMANCE OR FORBEARANCE OF SOME ACT WITH INTENT TO DO HARM WITHOUT EXCUSE OR JUSTIFICATION.

71) Novarro intended to harm Amore by arresting Amore without probable cause and without excuse or justification based upon the Novarro's mistaken belief that Amore was engaging in conduct that Novarro personally believed to be offensive and repugnant, but which conduct was legal.

ABUSE OF PROCESS: ELEMENT THREE: NOVARRO EMPLOYED REGULARLY ISSUED LEGAL PROCESS TO COMPEL PERFORMANCE OR FORBEARANCE OF SOME ACT WITH INTENT TO DO HARM WITHOUT EXCUSE OR JUSTIFICATION IN ORDER TO OBTAIN A COLLATERAL OBJECTIVE THAT IS OUTSIDE THE LEGITIMATE ENDS OF THE PROCESS.

72) The police officers of the Ithaca Police Department, specifically including Defendant Novarro, were aware that the Penal Law, § 240.35(3), was held to be unconstitutional and unenforceable, but the police officers of the Ithaca Police Department, specifically including Defendant Novarro, nonetheless conducted periodic undercover operations in Stewart Park, Ithaca, to thwart the legal conduct of persons, which conduct the members of the Ithaca Police Department, specifically including Defendant Novarro, determined was repugnant and offensive to them as individuals and which conduct the Ithaca police, including Defendant Novarro, attempted to suppress through illegal undercover operations and illegal arrest.

73) The police officers of the Ithaca Police Department, including Defendant Novarro, had an ulterior motive of suppressing and thwarting legal conduct, which the police officers of the Ithaca Police Department, including Defendant Novarro, found to be objectionable.

74) The collateral objective, which is outside the legitimate ends of process, sought by Novarro was the suppression or elimination of legal conduct by adult individuals in Stewart Park, which conduct Novarro, and other police officers employed by Ithaca, found to be personally offensive and repugnant.

DAMAGES

75) Novarro violated Amore's constitutional right to be free from abuse of process, as guaranteed by the Fourth Amendment of the United States Constitution.

76) Novarro violated 42 U.S.C. § 1983 by violating Amore's constitutional right to be free from abuse of process, as guaranteed by the Fourth Amendment of the United States Constitution.

77) Novarro caused Amore to incur special damages, including but not limited to past and future medical expenses; past and future attorney fees; past and future loss of income; past and future loss of earning capacity.

78) Novarro caused Amore to incur general damages, including but not limited past and future mental and physical pain and suffering.

79) Novarro acting maliciously and wantonly, with the intent to injure Amore, in committing the acts described in this complaint, warranting the imposition of punitive damages.

Wherefore, Joseph Amore demands judgment against Andrew Novarro in an amount in excess of the jurisdictional limitations of this court for mandatory arbitration, plus attorney fees, interest, costs, and punitive damages.

COUNT FOUR
AMORE V. NOVARRO
SECTION 1983 CLAIM: DEPRIVATION OF 14TH AMENDMENT RIGHT TO EQUAL
PROTECTION

SECTION 1983, ELEMENT ONE: NOVARRO ACTED UNDER COLOR OF LAW

80) All of the allegations of the complaint are incorporated.

81) By virtue of Novarro's appointment and employment as a police officer with Ithaca,

Novarro is a "police officer" as that term is defined in CPL § 1.20(34)(d). As a police officer,

Novarro, when arresting Amore, acted under color of law by using the authority invested in him

by virtue of his appointment and by using the arrest procedures, appearance ticket procedures,

and preliminary arraignment procedures set forth in CPL § 150.20, which procedures are only

available to police officers.

SECTION 1983, ELEMENT TWO: NOVARRO'S ACTIONS DEPRIVED AMORE OF THE FOURTEENTH
AMENDMENT RIGHT TO EQUAL PROTECTION.

82) The Fourteenth Amendment to the United States Constitution guarantees that "[n]o state

shall . . . deny to any person within its jurisdiction the equal protection of the laws."

83) The Equal Protection Clause of the Fourteenth Amendment directs that all persons

similarly situated should be treated alike. *See Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d

Cir. 1995) (*citing City of Cleburn v. Cleburn Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).

84) To establish an equal protection violation, plaintiff must prove purposeful discrimination

directed at an identifiable or suspect class. *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.

1995). Furthermore, "it is axiomatic that plaintiff must allege that similarly situated persons were

treated differently." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).

85) The right to free movement has been recognized by the Second Circuit. *Ramos v. Town

of Vernon*, 331 F.3d 315 (2d Cir. 2003) *King v. New Rochelle Mun. Hous. Auth.,* 442 F.2d 646,

648 (2d Cir. 1971); see also *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990) (observing that this Circuit "has held that the Constitution . . . protects the right to travel freely within a single state"); cf. *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (recognizing "the constitutional right to freedom of movement").

86) Amore, compared with others similarly situated, was selectively treated in that Amore was arrested and prosecuted by the Defendant Novarro because of his erroneous belief that Amore was engaged in conduct personally offensive to the Defendant Novarro although Amore was lawfully and legitimately exercising his constitutional right to freedom of movement in Stewart Park, Ithaca, New York.

87) The selective treatment was based on impermissible considerations by the Defendant Novarro of an intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure persons who the Defendant Novarro believed were engaging in conduct personally offensive to the Defendant Novarro.

88) Amore was treated differently by Defendant Novarro from similarly situated persons in that Defendant Novarro arrested and prosecuted Amore and Defendant Novarro did not arrest and prosecute other adult males present in Stewart Park, Ithaca, New York.

DAMAGES

89) Novarro violated Amore's constitutional right to equal protection, as guaranteed by the Fourteenth Amendment of the United States Constitution.

90) Novarro violated 42 U.S.C. § 1983 by violating Amore's constitutional right to equal protection, as guaranteed by the Fourteenth Amendment of the United States Constitution.

91) Novarro caused Amore to incur special damages, including but not limited to past and future medical expenses; past and future attorney fees; past and future loss of income; past and future loss of earning capacity.

92) Novarro caused Amore to incur general damages, including but not limited past and future mental and physical pain and suffering.

93) Novarro acting maliciously and wantonly, with the intent to injure Amore, in committing the acts described in this complaint, warranting the imposition of punitive damages.

Wherefore, Joseph Amore demands judgment against Andrew Navarro in an amount in excess of the jurisdictional limitations of this court for mandatory arbitration, plus attorney fees, interest, costs, and punitive damages.

COUNT FIVE
AMORE V. CITY OF ITHACA
SECTION 1983 CLAIM: *MONELL,* POLICY, CUSTOM, OR PRACTICE

94) All of the allegations of the complaint are incorporated.

ELEMENT ONE: CUSTOM OR PRACTICE OF PERMITTING NOVARRO TO ARREST CITIZENS WITHOUT PROBABLE CAUSE FOR CRIMES ALLEGING LOITERING AND DELIBERATE INDIFFERENCE TO THE CONSTITUTIONAL RIGHTS OF CITIZENS ARRESTED BY NOVARRO.

95) For a municipality to be held liable under 42 U.S.C. § 1983, the municipality must be found to have actually caused the tort. *Monell v. Dept. of Social Services*, 436 U.S. 658, 692 (1978).

96) Thus, a plaintiff must demonstrate: (1) the existence of a municipal policy or custom; and (2) the existence of a causal connection between the policy or custom and the deprivation of the plaintiff's constitutional rights. *Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir. 1987).

97) A municipality may be found liable under § 1983 only where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers. Moreover . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not reached formal approval through the body's official decision-making channels. *Monell v. Department of Social Serv.* ., 436 U.S. 658, 690-91, 694-95.

98) An unconstitutional governmental policy may be inferred either from the official pronouncements and actions of a governmental agency, or from custom. A single decision by a municipal official with final policy making authority may also create a municipal policy. *See Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986); *see also Krulik v. Board of Educ. of New York,* 781 F.2d 15, 23 (2d Cir. 1986)(stating that "an individual official's acts can rise to the level of 'policy' when 'senior personnel' knowingly 'acquiesce' in their subordinates' behavior").

99) By a pattern of arrests, including the arrest of Amore, Ithaca knew that Novarro, and other police officers employed by Ithaca, followed the custom or practice of the Ithaca Police Department of arresting citizens without probable cause for crimes alleging loitering.

100)     With knowledge of the pattern of arrests of citizens without probable cause for crimes alleging loitering initiated by Novarro, and other police officers employed by Ithaca, the Defendant City of Ithaca acquiescenced to Novarro's conduct of depriving citizens of constitutional rights and created an atmosphere that encouraged Novarro's unconstitutional behavior.

101)     Ithaca had actual, or, alternatively, constructive notice of the practice and custom of Novarro, and other police officers of the Ithaca Police Department, of arresting people without probable cause for allegedly violation New York Penal Law, §240.35(3), which section was declared unconstitutional by the New York Court of Appeals in *People v. Uplinger* (58 N.Y.2[nd] 936), but repeatedly failed to make any meaningful investigation of the misconduct by lower

level employees, specifically including Novarro and other members of the Ithaca Police Department.

102)     Defendant City of Ithaca recklessly disregarded Novarro's practice of arresting citizens without probable cause for crimes alleging loitering.

DAMAGES

103)     Ithaca violated Amore's constitutional right to be free from false arrest, malicious prosecution, abuse of process, and his right to equal protection, as guaranteed by the United States Constitution.

104)     Ithaca violated 42 U.S.C. § 1983 by violating Amore's constitutional right to be free from false arrest, malicious prosecution, abuse of process, and his right to equal protection, as guaranteed by the United States Constitution.

105)     Ithaca caused Amore to incur special damages, including but not limited to past and future medical expenses; past and future attorney fees; past and future loss of income; past and future loss of earning capacity.

106)     Ithaca caused Amore to incur general damages, including but not limited past and future mental and physical pain and suffering.

Wherefore, Joseph Amore demands judgment against the City of Ithaca in an amount in excess of the jurisdictional limitations of this court for mandatory arbitration, plus attorney fees, interest, and costs.

COUNT SIX
AMORE V. CITY OF ITHACA
SECTION 1983 CLAIM: *CITY OF CANTON*, FAILURE TO TRAIN, SUPERVISE

107)     All of the allegations of the complaint are incorporated.

ELEMENT ONE: A POLICY, PRACTICE, OR CUSTOM OF PERMITTING NOVARRO TO ARREST CITIZENS WITHOUT PROBABLE CAUSE FOR CRIMES ALLEGING LOITERING AND DELIBERATE INDIFFERENCE TO THE CONSTITUTIONAL RIGHTS OF CITIZENS ARRESTED BY NOVARRO.

108)     For a municipality to be held liable under 42 U.S.C. § 1983, the municipality must be found to have actually caused the tort. *Monell v. Dept. of Social Services*, 436 U.S. 658, 692 (1978).

109)     Thus, a plaintiff must demonstrate: (1) the existence of a municipal policy or custom; and (2) the existence of a causal connection between the policy or custom and the deprivation of the plaintiff's constitutional rights. *Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir. 1987).

110)     A municipality may be found liable under § 1983 only where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not reached formal approval through the body's official decision-making channels. *Monell v. Department of Social Serv.* ., 436 U.S. 658, 690-91, 694-95.

111)     An unconstitutional governmental policy may be inferred either from the official pronouncements and actions of a governmental agency, or from custom. A single decision by a municipal official with final policy making authority may also create a municipal policy. *See Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986); *see also Krulik v. Board of Educ. of New*

*York,* 781 F.2d 15, 23 (2d Cir. 1986)(stating that "an individual official's acts can rise to the level of 'policy' when 'senior personnel' knowingly 'acquiesce' in their subordinates' behavior").

112)     A failure by policymakers to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come into contact with the municipal employees. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

113)     Unknown municipal officials employed by Ithaca with final policy making authority organized, directed, supported, and encouraged the practice of Novarro and other members of the Ithaca Police Department to arrest people for allegedly violating the Penal Law, § 240.35(3), all the while knowing that the section had been held unconstitutional by the New York Court of Appeals.

114)     Alternatively, unknown municipal officials employed by Ithaca with final policy making authority knowingly acquiesced to the practice of Novarro and other members of the Ithaca Police Department to arrest people for allegedly violating the Penal Law, § 240.35(3), all the while knowing that the section had been held unconstitutional by the New York Court of Appeals.

115)     Ithaca had actual, or, alternatively, constructive notice of the practice and custom of Novarro, and other police officers of the Ithaca Police Department, of arresting people without probable cause for allegedly violation New York Penal Law, §240.35(3), which section was declared unconstitutional by the New York Court of Appeals in *People v. Uplinger* (58 N.Y.2[nd] 936), but repeatedly failed to make any meaningful investigation of the misconduct by lower level employees, specifically including Novarro and other members of the Ithaca Police Department.

116)     Ithaca had actual, or, alternatively, constructive notice of the practice and custom of Novarro, and other police officers of the Ithaca Police Department, of arresting people without probable cause for allegedly violation New York Penal Law, §240.35(3), which section was declared unconstitutional by the New York Court of Appeals in *People v. Uplinger* (58 N.Y.2[nd] 936), but repeatedly failed to train or supervise lower level employees, specifically including Novarro and other members of the Ithaca Police Department, which failure to train or supervise amounts to deliberate indifference to the constitutional rights of Amore.

DAMAGES

117)     Ithaca violated Amore's constitutional right to be free from false arrest, malicious prosecution, abuse of process, and his right to equal protection, as guaranteed by the United States Constitution.

118)     Ithaca violated 42 U.S.C. § 1983 by violating Amore's constitutional right to be free from false arrest, malicious prosecution, abuse of process, and his right to equal protection equal protection, as guaranteed by the United States Constitution.

119)     Ithaca caused Amore to incur special damages, including but not limited to past and future medical expenses; past and future attorney fees; past and future loss of income; past and future loss of earning capacity.

120)     Ithaca caused Amore to incur general damages, including but not limited past and future mental and physical pain and suffering.

Wherefore, Joseph Amore demands judgment against the City of Ithaca in an amount in excess of the jurisdictional limitations of this court for mandatory arbitration, plus attorney fees, interest, and costs.

Law Office of Edward E. Kopko                    Richard M. Wallace, Esq.


_____          _____
Edward E. Kopko, Atty. for Plaintiff             Guttman & Wallace, Atty. for Plaintiff
15 Nottingham Drive, Ithaca, New York            411 North Tioga Street
14850                                            Ithaca, New York 14850
607-269-1300; 607-269-1301 (fax)                 607-272-2102
eek@kopkolaw.com                                 Bar Roll No. 301275
Bar Roll No. 510874
Thursday, February 12, 2004