**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**JOSEPH AMORE,**

**Plaintiff,**

**v.** **5:04-CV-176 (FJS/DEP)**

**CITY OF ITHACA and ANDREW NOVARRO,**

**Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **WIGGINS, KOPKO & CRANE, LLP**<br>308 North Tioga Street<br>Ithaca, New York 14850<br>Attorneys for Plaintiff | **EDWARD E. KOPKO, ESQ.** |
| **GUTTMAN & WALLACE**<br>411 North Tioga Street<br>Ithaca, New York 14850<br>Attorneys for Plaintiff | **RICHARD M. WALLACE, ESQ.** |
| **OFFICE OF G. PETER VAN ZANDT**<br>53 Chenango Street, Suite 700<br>Binghamton, New York 13901<br>Attorneys for Defendants | **G. PETER VAN ZANDT, ESQ.** |

**SCULLIN, Senior Judge**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff filed a complaint on February 18, 2004, asserting § 1983 claims against Defendant Andrew Novarro, a City of Ithaca police officer, for (1) false arrest, (2) malicious prosecution, (3) abuse of process, and (4) deprivation of his Fourteenth Amendment right to

equal protection. *See* Complaint at ¶¶ 17-93. He also asserts *Monell* claims against Defendant City of Ithaca ("City") for (1) use of an improper policy, custom, or practice and (2) failure to train its employees. *See id.* at ¶¶ 94-120. Currently before the Court are Defendants' motion for summary judgment[1] and Plaintiff's cross-motion for partial summary judgment on the issue of liability.

## II. BACKGROUND

On October 19, 2001, Defendant Novarro sat in his unmarked police vehicle in plain clothes watching for drug activity in Stewart Park, a public park in Ithaca, New York. *See* Plaintiff's Statement of Material Facts at ¶¶ 5-6; Defendants' Statement of Material Facts at 9. Plaintiff approached Defendant Novarro's vehicle on the driver's side and tapped on the window. *See* Defendants' Statement of Material Facts at 9.[2] The parties did not know each other beforehand. *See id.* They now disagree on the content of their dialogue during the encounter.

According to Defendant Novarro, he asked what Plaintiff wanted; and Plaintiff replied, in essence, that he wanted to perform oral sex on him. *See id.* Plaintiff, however, claims that he initiated the conversation by asking Defendant Novarro whether he was "looking for something." *See* Plaintiff's Statement of Material Facts at ¶ 9. When Defendant Novarro responded, "I don't know, what do you have?," *see id.*, Plaintiff claims he replied, "how about a blow job[?]," *see id.*

---

[1] Although Defendants label their motion as a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, they also refer to it as one for summary judgment and refer to facts outside of the pleadings. Accordingly, the Court treats this motion as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

[2] Defendants' Statement of Material Facts does not contain numbered paragraphs in accordance with Local Rule 7.1(a)(3). As such, the Court cites to the relevant pages.

After Defendant Novarro identified himself as a police officer, Plaintiff "closed his eyes, sighed and dropped his chin down, made a sighing sound like, oh, and . . . said can't you just let me go[?]" *See* Plaintiff's Statement of Material Facts at ¶ 8. Defendant Novarro told Plaintiff that he could not leave, asked him for identification, and called for backup so he could issue Plaintiff an appearance ticket for loitering under New York Penal Law § 240.35(3). *See id.* Several days after Defendant Novarro issued Plaintiff the appearance ticket, he filed a criminal complaint on October 24, 2001, charging Plaintiff with violating § 240.35(3), *see id.* at ¶¶ 10-11, which prohibits "loiter[ing] or remain[ing] in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature[,]" N.Y. Penal Law § 240.35(3).

The Office of the City Prosecutor filed a motion in Ithaca City Court to dismiss the criminal charge against Plaintiff after discovering that the New York Court of Appeals had held § 240.35(3) unconstitutional in *People v. Uplinger*, 58 N.Y. 2d 936 (1983). *See id.* at ¶¶ 12-13; Defendants' Statement of Material Facts at 9-10. The city court granted the prosecutor's motion and entered an order on November 15, 2001, dismissing Plaintiff's criminal charge. *See* Plaintiff's Statement of Material Facts at ¶ 14.

## III. DISCUSSION

### A. Section 1983 claims against Defendant Novarro

#### *1. False arrest*

When analyzing a claim for false arrest under the Fourth Amendment to the United States Constitution, the court looks to "the law of the state in which the arrest occurred." *Davis v.*

*Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004) (citations omitted); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To prevail on such a claim under New York law, a plaintiff must demonstrate that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement is not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted).

Plaintiff has unquestionably met the first three elements. Defendant Novarro testified at his deposition that, once he revealed himself to Plaintiff as a police officer, Plaintiff

> closed his eyes, sighed and dropped his chin down, made a sighing sound like, oh, and he then said can't you just let me go. And I said I don't think so. . . . And I called for a marked patrol car to come down to the park because I did not have the specific item that I needed to issue him there for arresting him for the offense I arrested him for . . . .

*See* Plaintiff's Statement of Material Facts at ¶ 7. This dialogue reveals Defendant Novarro's intention to confine Plaintiff and Plaintiff's acknowledgment of that confinement and request to go free. Defendant Novarro does not contest these facts. Rather, he contends that Plaintiff has not proven the fourth element — that the confinement was not otherwise privileged.

A confinement is privileged if the officer had probable cause to arrest; therefore, the existence of probable cause is an absolute defense to a false arrest claim. *See Weyant*, 101 F.3d at 852. "An officer has probable cause to arrest when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing the crime.'" *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (quoting [*Weyant*, 101 F.3d at 852]))

(other citation omitted).

Under New York law, the defendant bears the burden of proving probable cause for a warrantless arrest. *See Raysor v. Port Auth.of N.Y. & N.J.*, 768 F.2d 34, 39-40 (2d Cir. 1985); *see also Jenkins v. City of N.Y.*, 478 F.3d 76, 88 (2d Cir. 2007) (recognizing that under New York law, a warrantless arrest gives rise to the presumption that the plaintiff's arrest is unlawful, which can be rebutted if the arresting officer can show "reasonable cause") (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)). Since "[p]resumptions and other matters related to the burden of proof are considered matters of substantive law, governed by the law of the jurisdiction whose substantive law applies to the merits of the question in issue[,]" *United States v. McCombs*, 30 F.3d 310, 323-24 (2d Cir. 1994) (citations omitted), this burden of proof standard applies equally to § 1983 false arrest claims in federal court.

Defendant Novarro did not have probable cause to arrest Plaintiff under § 240.35(3) because the New York Court of Appeals held that subsection facially unconstitutional in *Uplinger* in 1983. *Cf. Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979) ("Police are charged to enforce laws . . . *unless they are declared unconstitutional*." (emphasis added)). Nevertheless, to execute a lawful arrest, a police officer need only have probable cause to believe that a person has committed some criminal offense. *See Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004). Here, Defendant Novarro asserts that, even if he did not have probable cause to arrest Plaintiff for loitering under § 240.35(3), he had probable cause to arrest him for disorderly conduct pursuant to New York Penal Law § 240.20 or harassment in the second degree pursuant to New York Penal Law § 240.26(3) or both. *See id.* at 19.

New York Penal Law § 240.20 provides, in pertinent part, that

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
>
> . . . .
>
> 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or
>
> . . . .
>
> 7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose. . . .

N.Y. Penal Law § 240.20.

Disorderly conduct under § 240.20 proscribes conduct raising a "potential or immediate public problem." *People v. Munafo*, 50 N.Y.2d 326, 331 (1980). To determine whether a defendant's behavior meets this public dimension, a court must consider "the nature and number of [people] attracted, taking into account the surrounding circumstances, including, of course, the time and the place of the episode . . . ." *Id.* at 331-32 (holding that the defendant did not violate § 240.20 because his actions took place on a secluded portion of his own property, those present were small in number in relation to the large space, no bystanders were attracted to the scene, and there was no indication that the defendant intended to incite spectators) (citations omitted). Conduct arising only between a defendant and a law enforcement official does not constitute a public disturbance. *See People v. M.R.*, 12 Misc. 3d 671, 676 (N.Y. Crim. Ct. 2006) (finding no public disturbance where, although the conduct took place in a public park, the only people present were the defendant, his companions, and the arresting officer).

New York Penal Law § 240.26(3) provides that

> A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:
>
> . . . .
>
> 3. He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which

> serve no legitimate purpose . . . .

N.Y. Penal Law § 240.26(3).

The offense of harassment pursuant to § 240.26(3) proscribes repetitive conduct. Therefore, an isolated incident cannot constitute harassment. *See People v. Wood*, 59 N.Y.2d 811, 812 (1983) (holding that an isolated incident could not support a conviction for second degree harassment); *see also People v. Chasserot*, 30 N.Y.2d 898, 899 (1972).

The Court finds that there is a genuine issue of material fact concerning whether Defendant Novarro had probable cause to arrest Plaintiff for disorderly conduct or harassment. Defendants assert that Plaintiff performed oral sex on a stranger in a public park about fifteen minutes before he approached Defendant Novarro and asked him whether he was looking for oral sex. However, it is unclear whether Defendant Novarro was aware of this fact at the time of the arrest. If he was, this could provide support for a finding of probable cause to believe that Plaintiff's conduct raised a potential public problem or that he engaged in a course of conduct, rather than an isolated incident. On a motion for summary judgment, probable cause is "determinable as a matter of law if there is no dispute about the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852. Since Defendant Novarro's knowledge at the time he arrested Plaintiff is unclear, the Court cannot determine at the summary judgment stage whether Plaintiff has established a prima facie case for false arrest.

***2. Malicious prosecution***

In § 1983 malicious prosecution claims, as in false arrest claims, courts apply the substantive law of the state in which the prosecution occurred. *See Raysor*, 768 F.2d at 39.

Under New York law, a plaintiff must establish that "(1) the defendant commenced a criminal proceeding against him; (2) the proceeding ended in the plaintiff's favor; (3) the defendant did not have probable cause to believe the plaintiff was guilty of the crime charged; and (4) the defendant acted with actual malice." *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994) (citation omitted).

Actual malice "'means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (quotation omitted). If direct evidence of malice does not exist, it may be proven by circumstantial evidence, such as a history of acrimony between the parties. *See id.* at 630-31. Here, there is neither direct nor circumstantial evidence of malice. There are no facts to support Plaintiff's original assertion that Defendant Novarro was aware that § 240.35(3) was unconstitutional when he arrested him, *see* Complaint at ¶ 51, nor is there any evidence that Defendant Novarro acted out of hostility to Plaintiff's sexual proclivities. Since Plaintiff does not submit any evidence of actual malice, the Court grants summary judgment for Defendant Novarro on this claim.

***3. Abuse of Process***

Borrowing once again from New York law, "'a [§ 1983] malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003) (quotation omitted).

Plaintiff presents no evidence to support his contention that Defendant Novarro "instigated or procured" his arrest, or that Defendant Novarro "intended to harm" him because of Defendant Novarro's personal view that his conduct was "offensive and repugnant." *See* Complaint at ¶¶ 67, 71. Plaintiff approached Defendant Novarro in Stewart Park without inducement or provocation. *See* Plaintiff's Statement of Material Facts at ¶¶ 6-7. Furthermore, as stated, there is no indication that Defendant Novarro acted out of prejudice. Accordingly, the Court grants summary judgment for Defendant Novarro on this claim.

***4. Equal Protection***

The Equal Protection Clause recognizes that similarly situated persons must be treated alike. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Therefore, a plaintiff may establish a claim for selective law enforcement if he proves that "(1) [he was], compared with others similarly situated, [ ] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (citation and footnote omitted).

As discussed, there is no evidence to suggest that Defendant Novarro acted with malice or intention to violate Plaintiff's constitutional rights. Furthermore, there is no evidence that Defendant Novarro treated Plaintiff differently than similarly situated persons. Plaintiff contends that he was treated differently because "Defendant Novarro did not arrest and prosecute other adult males present in Stewart Park, Ithaca, New York." *See* Complaint at ¶ 88. This may be true; however, the uncontradicted evidence suggests that Defendant Novarro's purpose in the

park was to watch for drug activity and no one other than Plaintiff approached him to inquire whether he was interested in oral sex. Since there is no evidence that Defendant Novarro had ever confronted this situation before, that he neglected to arrest others for loitering, or that his actions were grounded in malice or other impermissible considerations, Defendant Novarro is entitled to summary judgment on this claim.

**B. Qualified immunity**

Defendant Novarro contends that, even if he violated Plaintiff's constitutional rights, he is insulated from liability under the doctrine of qualified immunity. A police officer is not entitled to qualified immunity for actions taken in his individual capacity if (1) his conduct violated the plaintiff's constitutional right and (2) the right at issue was clearly established at that time. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first issue — whether the defendant's conduct violated a constitutional right — is a threshold question which, if negated, obviates examination of the second issue. *See id.*; *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999). Since Defendant Novarro did not violate Plaintiff's constitutional rights to equal protection of the laws and freedom from malicious prosecution and abuse of process, the Court need not consider whether he was entitled to qualified immunity with respect to these claims.

However, the Court reaches the second issue with respect to Plaintiff's false-arrest claim. Therefore, the Court must consider whether the constitutional right was clearly established, so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citation omitted). The Court finds that Plaintiff's right to be free from unlawful arrest under § 240.35(3) was clearly established at the time that he was

arrested. As stated, the New York Court of Appeals held § 240.35(3) unconstitutional in *Uplinger* in 1983. The holding was not limited to the facts as applied in that case. Rather, the court stated in unequivocal terms that subsection three was facially invalid because it punished conduct leading to legal, consensual sex and contained no requirement that the conduct be offensive or annoying to others. *See Uplinger*, 58 N.Y. 2d at 938. In the eighteen years between *Uplinger* and Plaintiff's arrest, not one New York State court retreated from that decision.

Although Plaintiff's right was clearly established, Defendant would still be entitled to qualified immunity if he had arguable probable cause. *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quotation omitted). Although courts generally should not hold public officials to "what a lawyer would learn or intuit from researching case law," *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998), they must at least hold those officials to a basic standard of awareness where the state's highest court has pronounced a statute facially unconstitutional. Since the New York Court of Appeals held § 240.35(3) facially unconstitutional, that statute did not have presumptive validity. *Cf. Connecticut v. Crotty*, 346 F.3d 84 (2d Cir. 2003). Therefore, Defendant Novarro cannot demonstrate that he had arguable probable cause to arrest Plaintiff under § 240.35(3). However, since, for the reasons stated above, there is a genuine issue of fact concerning whether Defendant Novarro had probable cause to arrest Plaintiff for disorderly conduct or second-degree harassment, there is also a genuine issue of fact concerning whether Defendant Novarro had *arguable* probable cause for those offenses. Accordingly, the Court denies Defendants' motion

and Plaintiff's cross-motion for summary judgment on the false-arrest claim.

## C. *Monell* claims against Defendant City

Although a municipality cannot be held vicariously liable for the conduct of its employees, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), it may be directly liable if it (1) adopts an unconstitutional policy or course of conduct, *see id.* at 694; or (2) "is aware that its policy may be unconstitutionally applied by inadequately trained employees but [ ] consciously chooses not to train them," *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004) (citation omitted).

### *1. Failure to train*

A municipality may be liable under § 1983 for failing to train and adequately supervise its employees. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). However, "the inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388 (footnote omitted). Deliberate indifference is established by three elements. "First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation." *Walker v. City of N.Y.*, 974 F.2d 293, 297 (2d Cir. 1992) (citation omitted). "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Id.* "Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a

citizen's constitutional rights." *Id.* at 298 (citation omitted).

Plaintiff raises a genuine issue of material fact concerning whether Defendant City exhibited deliberate indifference. Plaintiff submits evidence that Defendant City knew "to a moral certainty" that its officers would encounter individuals soliciting sex in Stewart Park. Officer Christopher Miller testified that he made multiple arrests in Stewart Park for indecent exposure involving sexual acts and communicated these arrests to his superiors. *See* Plaintiff's Memorandum of Law at Exhibit "1" at A103, A105-08. The arrests occurred in the summer of 2000 or 2001, before Plaintiff's arrest on October 19, 2001. *See id.* at A48. Moreover, both Officer Miller and City Prosecutor Margaret McCarthy testified that it was common knowledge in the community that Stewart Park was a meeting place for anonymous sexual encounters. *See id.* at A49, A111-13.

Defendant City contends that it could not have exhibited deliberate indifference because the Ithaca police had never arrested anyone other than Plaintiff under this statute. This argument is unavailing. "Deliberate indifference" does not require actual knowledge of prior constitutional deprivations. *See Doe v. N.Y. City Dep't of Soc. Servs.*, 649 F.2d 134, 145 (2d Cir. 1981). It simply means that a municipality purposely ignored a "known risk." *Id.* Courts interpreting this standard have found a "known risk" where the defendant knew that its agents would confront a factual scenario naturally giving rise to the constitutional violations at issue. *See, e.g., DiLoreto v. Borough of Oaklyn*, 744 F. Supp. 610, 623-24 (D.N.J. 1990) (finding that "strip searching by police and accompanying detainees to the bathroom is not an uncommon occurrence"; and, therefore, the municipality "has a responsibility to implement policies that are consistent with the

Constitution and to train its officers accordingly"). The *City of Canton* Court described a paradigmatic example of a "known risk":

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*City of Canton*, 489 U.S. at 390 n.10 (internal citation omitted).

As all city policymakers *generally* know that police officers must apprehend fleeing felons, conduct strip searches, and accompany detainees to the bathroom, Defendant City *specifically* knew that its police officers operating in Stewart Park would encounter individuals soliciting and engaging in sex. Therefore, assuming Plaintiff's evidence to be true, Defendant City possessed the knowledge required under *Walker*.

Furthermore, Plaintiff submits sufficient evidence to show that the situation presented a difficult choice, which instruction by Defendant City would have clarified. A difficult choice is one for which "more than the application of common sense is required." *Walker*, 974 F.2d at 297. That standard was clearly met in this case. New York Penal Law § 240.35(3) prohibits "loiter[ing] or remain[ing] in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature." N.Y. Penal Law § 240.35(3). A common sense reading of that language would place Plaintiff's actions squarely within the purview of § 240.35(3). Defendant Novarro would have had to conduct legal research or seek expert advice in order to discover the statute's invalidity.

Finally, the decision whether to arrest an individual for soliciting sex, if incorrect, will

frequently violate that individual's constitutional rights. A police officer with inadequate knowledge of the criminal statutes relevant to his ordinary duties is at great risk of executing a false arrest. Accordingly, the Court finds a genuine issue of material fact concerning whether Defendant City exhibited deliberate indifference and denies Defendants' motion and Plaintiff's cross-motion for summary judgment on the failure-to-train claim.

***2. Improper policy or custom***

A plaintiff may hold a municipality liable for his injuries where he can (1) "'prove the existence of a municipal policy or custom' that caused his injuries" and (2) "'establish a causal connection . . . between the policy and the deprivation of his constitutional rights.'" *Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir. 1987) (quotation omitted). In Plaintiff's complaint, he alleges that Defendant City is liable for the "the custom or practice of the Ithaca Police Department of arresting citizens without probable cause for crimes alleging loitering." *See* Complaint at ¶ 99. Alternatively, Plaintiff asserts that Defendant City acquiesced to Defendant Novarro's unlawful arrest. *See id.* at ¶ 100. As stated, there is no evidence that the Ithaca Police ever arrested anyone other than Plaintiff for loitering, with or without probable cause. Furthermore, Defendant City clearly did not ratify Defendant Novarro's unlawful arrest of Plaintiff. Defendant City officials acknowledged the error and took steps to correct it by moving to dismiss his criminal charges. *See* Plaintiff's Statement of Material Facts at ¶¶ 12-13. Accordingly, the Court grants Defendant City's motion for summary judgment on the improper-policy-or-custom claim.

**D. Damages**

Defendants further seek summary judgment on the issue of damages, contending that Plaintiff is not entitled to damages in this case because his injuries were not caused by his arrest, but "by his own admission [that he] had been soliciting unprotected oral sex from strangers . . . in a public park." Defendants' Memorandum of Law at 25. As in other areas of law, damages in § 1983 false arrest actions are primarily based on principles of compensation. *See Kerman v. City of N.Y.*, 374 F.3d 93, 123-24 (2d Cir. 2004). Therefore, plaintiffs may recover for physical injury and emotional distress proximately caused by the defendant's conduct during "'the time of detention up until the issuance of process or arraignment.'" *Townes v. City of N.Y.*, 176 F.3d 138, 149 (2d Cir. 1999) (quotation omitted); *see also Kerman*, 374 F.3d at 124. In the absence of compensable injury, the court must award nominal damages. *See Kerman*, 374 F.3d at 123.

Moreover, Plaintiff may be entitled to additional damages for intangible rights, such as loss of liberty. *See Raysor*, 768 F.2d at 39. Loss-of-liberty damages may include loss of time, humiliation, physical discomfort, injury to reputation, and inconvenience. *See Kerman*, 374 F.3d at 125 (citations omitted).

Damages under § 1983 "'must ordinarily be determined by a jury, not a judge.'" *Gonzalez v. City of Schenectady*, No. 00-CV-0824, 2001 WL 1217224, *9 (N.D.N.Y. Sept. 17, 2001) (quoting *Dasher v. Hughes,* 2000 WL 726865, at *8 (S.D.N.Y. June 6, 2000)). Thus, the extent of Plaintiff's injuries and whether Defendant Novarro's illegal arrest or some other source caused those injuries are material issues of fact that must be resolved at trial. Additionally, to the extent that a municipality is found liable under *Monell*, it is jointly and severally liable for the damages that its agents caused. *See DiSorbo v. Hoy*, 343 F.3d 172, 182 (2d Cir. 2003) (citing

*White-Ruiz v. City of New York*, 983 F. Supp. 365, 390-92 (S.D.N.Y. 1997)). Accordingly, the Court denies Defendants' motion for summary judgment on this ground.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** and Plaintiff's cross-motion for summary judgment is **DENIED** with respect to Plaintiff's claims against Defendant Novarro for malicious prosecution, abuse of process, and equal protection; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** and Plaintiff's cross-motion for summary judgment is **DENIED** with respect to Plaintiff's improper-policy claim against Defendant City; and the Court further

**ORDERS** that Defendants' motion and Plaintiff's cross-motion for summary judgment are **DENIED** with respect to Plaintiff's false arrest claim against Defendant Novarro and failure-to-train claim against Defendant City; and the Court further

**ORDERS** that Defendants' motion for summary judgment on the issue of damages is **DENIED**; and the Court further

**ORDERS** that Plaintiff's counsel is to initiate a telephone conference with the Court and Defendant's counsel on **Tuesday, April 8, 2008** at **10:00 a.m.**, to set a trial date for this action.

**IT IS SO ORDERED.**

Dated: March 28, 2008
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge